UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BLAKE WINGATE,

                       Plaintiff,

    -against-                                  **REPORT AND**
                                                **RECOMMENDATION**

                                                No. 14-CV-4063-EK-JRC

CORRECTION OFFICER BURKE, *et al.*,

                     Defendants.
------------------------------------------------------------------x

**JAMES R. CHO, United States Magistrate Judge:**

       Plaintiff Blake Wingate ("Plaintiff"), a *pro se* inmate housed by the New York State Department of Corrections, filed this action on June 27, 2014, alleging violations of his civil rights. *See* Compl., Dkt. 1. In this trial-ready case, jury selection was scheduled to commence on April 13, 2022 immediately followed by trial before the Honorable Eric R. Komitee. *See* Order dated April 6, 2022, Dkt. 357. The sole issue to be tried before the jury was whether nine current or former Correction Officers or New York City Department of Correction employees -- Rhoda Greene, William Feaster, Edmond Burke, Derrick Wallace, Andre Hall, James Stanton, Nekeisha Delapenha, Thomas Scully, and Kimberley Johnson (collectively, "Defendants") -- violated Plaintiff's First Amendment rights by interfering with his mail. *See* Opinion & Order, Dkt. 246.

       On April 13, 2022, jury selection commenced before the undersigned Magistrate Judge. During the jury selection process, plaintiff was uncooperative, abusive, and repeatedly obstructed the proceedings. Plaintiff's obstructionist behavior culminated on April 18, 2022 -- the third day set aside for jury selection -- when Plaintiff walked out of jury selection and asked to return to his facility. As a result of Plaintiff's objectionable conduct throughout the jury selection process, Defendants repeatedly moved on the record on April 13, 14, and 18, 2022 to dismiss the case

pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  Defendants also filed a motion to dismiss.  *See* Mot. to Dismiss, Dkt. 370; transcript from proceedings on April 13, 2022 ("Apr. 13 Tr.") at 49:20-50:9; transcript from proceedings on April 14, 2022 ("Apr. 14 Tr.") at 199:23-25; and transcript from proceedings on April 18, 2022 ("Apr. 18 Tr.") at 18:15-19:1.  For the reasons discussed below and on the record on April 18, 2022, this Court respectfully recommends that the Court grant Defendants' motion, and dismiss Plaintiff's case with prejudice.

## Background

The Court will assume familiarity with the facts and procedural history of this matter and will discuss the procedural history only insofar as it is relevant.  On June 27, 2014, Plaintiff commenced this action under 42 U.S.C. § 1983 alleging various violations of his constitutional rights.  *See* Compl.  On April 6, 2018, Defendants moved for summary judgment.  *See* Mot. for Summary J., Dkt. 220.  On August 14, 2018, the Court granted Defendants' motion in part and dismissed all of Plaintiff's claims, except for his claim that Defendants had interfered with his mail while in city custody at Rikers Island.  *See* Opinion & Order.

On April 6, 2022, the Court scheduled jury selection to commence on April 13, 2022, followed thereafter by trial.  *See* Dkt. entry dated April 6, 2022.  On April 13, 2022, Plaintiff arrived several hours late to jury selection because he claimed that he needed to get batteries for his hearing aids before coming to Court.  *See* Mot. to Dismiss at 2.  When he arrived Plaintiff was agitated and uncooperative.  *See id*.  During the jury selection process, Plaintiff repeatedly interrupted the proceedings, refused to accept court orders, and used "extremely vulgar and racially charged language" throughout the proceedings.  *Id*.  This Court sets forth below a few of the plethora of offensive and disrespectful comments Plaintiff made during the proceedings:

2

    THE COURT:  Mr. Wingate.
    MR. WINGATE:  No.  Mr. Wingate is talking right now.  You wanted me to get ready.  I'm ready. . . .
    THE COURT:  Mr. Wingate.
    MR. WINGATE:  Stop.  Stop.  Don't do that, Jack, because you about to call the jury in here.  I wait until the jury come in here and embarrass you.

Apr. 13 Tr. at 12:17-24.

    MR. ARKO:  Your Honor --
    MR. WINGATE:  Shut up.  Ain't nobody talking to you.  Wait until I'm finished, dude.

Apr. 13 Tr. at 13:4-6.

    THE COURT:  You need to calm down.
    MR. WINGATE:  You need to get the f**k out of here, because if you sit on this case, it's going to be a mock trial.

Apr. 13 Tr. at 28:12-15.

    THE COURT:  You will not come back if you don't stop talking.
    MR. WINGATE:  I don't care if I come back.  Maybe you'll be gone by then maybe you'll go back to back Wuhan and make a new disease.

Apr. 13 Tr. at 40:9-13.

    THE COURT:  You're going to move on.
    MR. WINGATE:  Just one paragraph. So slow down, Cho. Shut the hell up.

Apr. 13 Tr. at 43:12-14.

    THE COURT:  I'm warning –
    MR. WINGATE:  I'm warning you. . . . You don't have patience, you don't have tolerance, and you can suck my d**k.  How about that?  Put it in your mouth and treat it like a Tic-Tac.

Apr. 13 Tr. at 44:12-18.

    THE COURT:  You have to stop talking.
    MR. WINGATE:  You can suck my d**k.  Get out of here. . . .

Apr. 13 Tr. at 45:2-4.

    THE COURT: You have to calm down.
    MR. WINGATE:  I'm calm like a grape.  You should see when I'm upset.  I beat off, masturbate, shoot all over the place.  I might shoot in your face. . . .

Apr. 13 Tr. at 45:18-21.

    MR. WINGATE:  . . . Kiss my a**.  I'm going to be quiet because you so stupid. . . .
. . .
    MR. WINGATE:  I was cooperating.  I was reading off two documents, you cut me off.  When you did that, you pulled my d**k, I don't like that.
    THE COURT:  Mr. Wingate, you need to watch your language.

>MR. WINGATE:  Under the First Amendment, there's not a man or a woman in the room who never heard pull my d**k, suck my d**k, or kiss my a**.  These are all correction officers, this is New York's Boldest . . .

Apr. 13 Tr. at 47:3 – 48:3.

>THE COURT:  I'm letting you know you are to comply with my orders. I'm instructing you not to --
>MR. WINGATE:  I don't respect your orders, you're not here.

Apr. 13 Tr. at 49:11-14.

>THE COURT:  Okay. Mr. Wingate, watch your language.
>MR. WINGATE:  I'm not gonna watch my language. I can disrespect anybody I want, any time I want --
>THE COURT: You are not going to disrespect anyone in my courtroom, Mr. Wingate.
>. . .
>THE COURT:  I already made my ruling, Mr. Wingate.
>MR. WINGATE: Shut the f**k up.

Apr. 13 Tr. at 79:4 – 80:6.

During the proceedings, Plaintiff also spoke at length about unrelated claims and tried to relitigate prior court orders, including the Court's prior ruling on Defendants' motion for summary judgment.  *See* Mot. to Dismiss at 2-5.  The Court instructed Plaintiff numerous times to stop talking and not raise issues that were irrelevant or have already been decided, especially in front of potential jurors.  *See id*.  Plaintiff continued to obstruct the proceedings.  *See id*.

Notwithstanding Plaintiff's obstructionist conduct, on Wednesday, April 13, 2022, the Court managed to *voir dire* 31 potential jurors and excused 17 jurors for cause.  The remaining 14 jurors were instructed to return to Court on Thursday, April 14, 2022 to complete jury selection. *See* Dkt. entry dated April 13, 2022.  The Court further instructed Plaintiff that if he continued to disrupt the proceedings, the Court may dismiss his case under Rule 41.  *See* Apr. 13 Tr. at 31:6-21.  At the conclusion of proceedings on Wednesday, April 13, 2022, Plaintiff made it clear in front of the potential jurors that he did not intend to appear in Court the following day. *See* Apr. 13 Tr. at 186:17-20.

4

Even though the Court ordered Plaintiff to return to Court by 9:00 a.m. on Thursday, April 14, 2022, Plaintiff failed to appear. The police escort that had been sent to the facility to pick up Plaintiff notified the Court that Plaintiff was refusing to come to Court because he was "not feeling well." *See* Dkt. 369; *see also* Apr. 14 Tr. at 199:11-21. In the afternoon of April 14, 2022, the Court scheduled a telephonic conference with Plaintiff. During the call, Plaintiff continued to address irrelevant issues at length, insult the Court and opposing counsel, and continued to use obscene language. *See, e.g.*, Apr. 14 Tr. at 212:1-6; 217:20-219:2. The Court reminded Plaintiff again that if he failed to cooperate with court orders, his case could be dismissed under Rule 41(b). *See id*. at 213:22-25; 214:16-20. Plaintiff stated that he had received medical attention in the morning, and was prepared to proceed with jury selection. *See* Dkt. entry dated Apr. 14, 2022. However, given that the police escort sent to pick up Plaintiff in the morning had already left the facility when Plaintiff initially refused to come to Court, and given the time of day, the Court adjourned the jury selection proceedings until 9 a.m. on Monday, April 18, 2022. *See id*. This Court excused the 14 jurors that had returned to Court on April 14th and instructed them to return for a third day on Monday, April 18, 2022.[1] *See id.; see also* Apr. 14 Tr. at 214:3-8.

On Monday, April 18, 2022, Plaintiff continued to obstruct the proceedings and refused to proceed with jury selection even though potential jurors were waiting in the Courthouse. *See, e.g.,* Apr. 18 Tr. at 6:23-9:7; 16:19-17:10. The Court instructed Plaintiff that he could raise any issues regarding the Court's pretrial orders with Judge Komitee after completing jury selection. *See id*. at 15:12-14. However, Plaintiff refused to continue with the jury selection process and

---

[1] To accommodate Plaintiff's religious observances, on April 6, 2022, the Court agreed not to hold trial-related proceedings on Fridays.

abruptly left the Courtroom returning to the holding cell adjoining the Courtroom before the Court could even continue with jury selection. This Court warned Plaintiff as he was leaving the Courtroom that if he left, this Court would have no choice but to recommend dismissal of his action in light of his failure to cooperate with the jury selection proceedings. Plaintiff ignored the Court's warning and returned to the holding cell. The officers who had escorted Plaintiff to the Courthouse then notified this Court that Plaintiff had asked them to return him to Green Haven Correctional Facility where he was being housed. *See id*. at 17:14-15; 18:10-11.

After Plaintiff walked out of the Courtroom and refused to participate in jury selection, Defendants renewed their motion to dismiss pursuant to Rule 41(b). *See id*. at 18:15-19:1. In light of Plaintiff's failure to cooperate with the proceedings and his obstructionist behavior, this Court recommended on the record that Judge Komitee grant Defendants' motion and dismiss the case. *See id*. at 19:2-9; 19:18-20:7. This Report and Recommendation further articulates this Court's reasons for recommending dismissal with prejudice.

## Discussion

### I.     Legal Standard

Under Rule 41(b) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a case if "the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). "A district court has the inherent power to dismiss a case with prejudice for lack of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure." *Stanford v. R.C. Doliner, Inc.*, No. 01-CV-1052, 2001 WL 1502554, at *1 (S.D.N.Y. Oct. 19, 2001). Courts have this power "in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Lewis v. Cavanaugh*, No. 10-CV-

112, 2019 WL 340742, at *2 (D. Conn. Jan. 28, 2019), *aff'd sub nom. Lewis v. Cavanugh*, 821 F. App'x 64 (2d Cir. 2020).

However, while a court may dismiss a case under Rule 41(b), "courts should endeavor to avoid dismissal when reasonably possible." *Lewis*, 2019 WL 340742, at *2; *see also Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014) (noting that "[w]hile district courts generally have broad discretion with respect to the imposition of sanctions," dismissal is a "harsh remedy" that should only be used in "extreme situations" when a "court finds willfulness, bad faith, or any fault by the non-compliant litigant." (internal quotations and citations omitted)). "While [courts are] ordinarily obligated to afford a special solicitude to *pro se* litigants, dismissal of a *pro se* litigant's action as a sanction may nonetheless be appropriate so long as a warning has been given that noncompliance can result in dismissal." *Koehl*, 740 F.3d at 862 (internal citations and quotations omitted) (noting that the "liberal *pro se* practice is a shield against the technical requirements . . . not a sword with which to insult a trial judge" (internal citations and quotations omitted)); *see also Melendez v. City of New York*, No. 12-CV-9241, 2014 WL 6865697, at *2 (S.D.N.Y. Dec. 4, 2014) (collecting cases where courts have dismissed *pro se* plaintiffs' claims for failure to prosecute).

To determine whether to dismiss for lack of prosecution, courts should consider the following five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Jefferson v. Rosenblatt*, No. 13-CV-5918, 2018 WL 3812441, at *3 (E.D.N.Y. Aug. 10, 2018). "No single factor is generally dispositive." *Id*. (citing *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014)).

**II.  Analysis**

The Court now turns to each of the five factors in this case. First, Plaintiff has repeatedly failed to comply with court orders throughout the eight years his case has been pending before this Court culminating most recently with his uncooperative and obstructionist behavior during jury selection. *See* Mot. to Dismiss at 5. From the outset of jury selection, Plaintiff repeatedly failed to follow this Court's instructions causing inordinate delay in the selection process. His abusive and inappropriate behavior during the proceedings and frequent outbursts forced this Court to issue him repeated warnings to control himself. Plaintiff's clear refusal to participate in the jury selection process and obstructionist behavior came to a head when he walked out of jury selection on Monday, April 18, 2022 and asked to return to his facility while prospective jurors -- who had been called to the Courthouse on three separate days for jury selection -- were waiting outside the Courtroom.

Defendants further recounted other examples of Plaintiff's history of obstructionist behavior. For example, Plaintiff "walked out of a scheduled [deposition] that took place on March 21, 2017," and was uncooperative at the final pretrial conference before Judge Komitee on April 6, 2022. Additionally, Defendants note that multiple judges have instructed Plaintiff about the limited scope of his litigation. *See id*. However, despite repeated instructions, Plaintiff continued to raise unrelated claims and tried to relitigate issues that had already been decided, even during jury selection. *See id*.

The second factor weighs in favor of dismissal, as Plaintiff had adequate notice that his case would be dismissed if he continued to defy court orders. *See Melendez v. City of New York*, 2014 WL 6865697, at *3 (noting that the second factor pointed in favor of dismissal because the court warned plaintiff three times about the potential for dismissal). During each of the three days of jury selection, the Court warned Plaintiff that his case may be dismissed if he continued to obstruct the proceedings, and even reminded Plaintiff of this fact as he walked out of the Courtroom on April 18, 2022. *See* Apr. 18 Tr. at 17:5-8. Further, Defendants filed a motion to dismiss under Rule 41(b) and provided Plaintiff with a copy of the motion in court on April 18, 2022. *See* Apr. 18 Tr. at 11:5-9.[2]

The third factor also weighs in favor of dismissal. Defendants will be prejudiced by any further delay in these proceedings as this case has been pending for eight years. "Prejudice resulting from unreasonable delay may be presumed as a matter of law." *Jefferson*, 2018 WL 3812441, at *4 (citing *Peart v. City of N.Y.*, 992 F.2d 458, 462 (2d Cir. 1993)). However, "even absent [a presumption of prejudice], Defendants have been prejudiced by preparing for a trial that did not go forward." *Id*.

The fourth factor points in favor of dismissal. By failing to comply with court orders and walking out of jury selection, Plaintiff inconvenienced the Court, Defendants, and, more important, prospective jurors who were forced to come to court on three separate days for jury selection, resulting in a waste of time and this Court's resources. Courts have held that failing to appear for jury selection or trial weighs in favor of dismissal, even where a plaintiff otherwise does not "significantly burden the Court." *Jefferson*, 2018 WL 3812441, at *4 (collecting cases); *see also Lewis v. Rawson*, 564 F.3d 569, 581 (2d Cir. 2009) (concluding that "where a party fails

---

[2] Plaintiff refused to accept service of Defendants' motion to dismiss.

9

to appear or refuses to proceed with trial after the jury ha[s] been drawn, dismissal with prejudice may be particularly appropriate."); *Frederick v. Murphy*, No. 10-CV-06527, 2018 WL 10247403, at *7 (W.D.N.Y. Apr. 16, 2018) ("Nonetheless, even before a jury is selected, a great number of potential jurors must deviate from their daily routine in order to engage in one of the most crucial functions of civic life."). Here, this factor weighs heavily in favor of dismissal in light of Plaintiff's lack of consideration "for the resources expended by the Court and Defendants in preparing for his trial, the inconvenience caused to the prospective jurors and the costs to the Court in assembling the jury pool." *See Frederick*, 2018 WL 10247403, at *8.

Finally, this Court does not believe any lesser sanction would be appropriate. As Plaintiff is proceeding *in forma pauperis*, a monetary sanction is unlikely to change Plaintiff's behavior. *See Jefferson*, 2018 WL 3812441, at *4. Further, holding Plaintiff in contempt would unlikely compel Plaintiff to comply with any court order as he is already incarcerated.

Given that Plaintiff has not complied with court orders, even with the repeated threats of dismissal, this Court shares Defendants' concerns that Plaintiff may not abide by court orders at trial and could "taint the jury and engage in antics that will result in a mistrial." Mot. to Dismiss at 6. Accordingly, this Court is not convinced that any lesser sanction would be effective, and thus, recommends that this action be dismissed with prejudice.

## Conclusion

In summary, for the reasons stated above and on the record on April 18, 2022, this Court respectfully recommends that Plaintiff's case be dismissed for failure to prosecute and comply with court orders.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs Defendants' counsel to serve a copy of this Report and

Recommendation by overnight mail and first-class mail on Plaintiff at both the Green Haven Correctional Facility, P.O. Box 4000, Stormville, New York 12582, and at Five Points Correctional Facility, 6600 State Route 96, Caller Box 119, Romulus, New York 14541, and file proof of service on ECF.

Any objections to the recommendations made in this Report must be filed with the Honorable Eric R. Komitee within 14 days after the filing of this Report and Recommendation and, in any event, on or before **May 2, 2022**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate judge's] decision").

    **SO ORDERED**

Dated:  Brooklyn, New York
        April 18, 2022

                                      s/ James R. Cho
                                      James R. Cho
                                      United States Magistrate Judge